Mr. Justice Miller
delivered tbe opinion of tbe court:
This is an appeal from the Court of Claims.
Tbe Secretary of War, by an order approved by tbe President, of tbe date of September 1,1861, authorized General Butler to “ raise, organize, arm, uuiforip, and equip,” in the New England States, a force not exceeding six regiments, and bis requisitions on tbe quartermaster’s, ordnance, and other staff departments of tbe Army were to be obeyed, provided “ tbe cost of such recruitment, armament, and equipment did not exceed in the aggregate that of like troops now or hereafter raised for tbe service of tbe United States.”
Under this order the plaintiff, on a written contract with General Butler, furnished tbe Government six thousand En-field rifles for these troops. The rifles were accepted and approved, and payment made at tbe rate of $27 per gun for 2,800, and $20 per gun for 3,200.
Tbe plaintiff claims that, under the contract, be is entitled to $27 per gun for these last, and brings this suit for the balance due at that price.
The matter in issue is to be determined by a word constructive of the written contract.
The original contract was for six thousand “Minnie rifles of the Liege pattern, with saber bayonets and all appendages complete,” for which the United States contracts “ and agrees to pay for each of said rifles, as shall pass inspection, the sum of $27, or such less sum as the Ordnance Department may have paid for guns like in quality or description, or contracted to pay for to said Garrison.”
From the finding of the court, it appears that, at the suggestion of Major Strong, chief of ordnance of the New England Department, the Enfield rifle was substituted for the Liege *80 pattern, when the following memorandum was indorsed on the original eontract:
“ It is agreed by the United States to accept from O. K. Garrison, the contractor, the long Enfield rifles, with bayonets of the triangular pattern in place of the saber bayonets, upon the value conditions as are herein specified.
B. F. BUTLEB,
' Major General Oommanding.
The claimant insists that the only effect of this supplementary indorsement of General Butler was to substitute the Enfield for the Liege gun at the same price that was agreed to he paid for the latter.
The counsel for the Government maintain that its effect is to accept the Enfield rifle at any sum less than $27, for which the United States had purchased Enfield rifles prior to the date of the contract, from any other person.
As the court does not find that the Liege gun had been purchased for less than $27, the plaintiff would be entitled, under his construction, to that sum.
It must be confessed that the language of the memorandum is not happy. To accept the Enfield rifle, in place of the saber bayonet, “ upon the value conditions as are herein specified,” is not very clear, and, at best, but amounts to a reference to the original agreement for the price of the substituted gun.
We are inclined to the view of the contract claimed by plaintiff, for the following reasons:
1. The supplementary agreement is signed by General Butler, and not by plaintiff. Its doubtful expressions should, therefore, according to a well known rule, be construed most strongly against the party who uses the language.
2. The change in the contract was made at the request of the ordnance officer of the Government. It was, therefore, for the accommodation of defendant.
3. This construction was acted upon at the time by Major Strong, the officer at whose suggestion it was made, and who certified the account, and paid at that price for the first 2,800 guns and would have paid the same price for the others, but, was forbidden by the Secretary of War.
4. According to our construction of the original agreement, the alternative price, less than $27, was the prices of Liege *81 guns, for which the government might have paid, or contracted to pay, Garrison, before the present contract. This view is confirmed by the fact, found by the court, that Garrison had a contract with the Ordnance Department, of July 1,1861, for ten thousand Liege guns, at $27 per gun, which had not then been performed. It seems reasonable that it was in reference to this contract with Garrison,already made by theDepartment, thepriceof which was probably unknown to General Butler, that the provision was-inserted by which he secured himself against paying more than the Government had already paid for similar guns to the same party, and as Garrison knew what the price in that contract was, he had no objection to the provision.
If this view of the alternative clause of the original agreement be correct, then it could have no application to the substituted Enfield rifle, because Garrison had never received any pay, or contracted to receive pay, for such guns, with the Ordnance Department. The effect of this was to leave the reference of the subsequent indorsement to the original contract for the price, as limited to the $27.
As we have already said that we believe this to have been the real intention of the parties, it should be carried into effect by the Court of Claims.
It is objected to this view that General Butler’s authority, from the Secretary of War, to contract, was limited to the prices paid by the Government for arms similar to those purchased by him, and that this court finds that Enfield rifles were then being purchased at from $20 to $23 per gun.
We do not so understand the order to General Butler. His order was to raise, arm, and equip six thousand men, “ provided the cost of such recruitment, armament, and equipment, does not exceed in the aggregate that of like troops now or hereafter raised for the service of the United States.”
Our first observation is, that this must evidently have been merely directory to General Butler; for it could not have been supposed that he could contra,ct with any person for arms, clothing,- &c., at prices to be determined by what the Government could buy them for afterward.
2. General Butler was only required to bring the costs of recruiting, arming, and equipment, in the aggregate, within that of like troops raised for the service. This, of course, left him a discretion in contracting for each article he needed, provided *82 tb.e amount of all Ms contracts did not exceed the expense laid down by the rule.
The judgment of the Court of Claims is reversed, with instructions to the court below to enter a judgment for the plaintiff for the difference between $20 and $27 each for the 3,200 guns described in the second voucher.